*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| **JOSEPH R. G.,** )  )   | |
| *Plaintiff*  ) )  | |
| v. ) | No. *2:20-cv-00147-DBH* |
| )  | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) ) | |
| *Defendant* ) | |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) failed to find that he had limitations in dealing with co-workers and supervisors, rendering the determination of his mental residual functional capacity (RFC) unsupported by substantial evidence, and (ii) relied on different and conflicting hypothetical questions posed to the vocational expert (VE) at hearing, rendering her decision internally inconsistent and incoherent. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 12) at 3-6. For the reasons that follow, I

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 416.920, 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 13; that he had the severe impairments of depression, anxiety, unspecified mood disorder, a language-based learning disability, and impulse control disorder, Finding 3, *id*.; that he had the RFC to perform a full range of work at all exertional levels but needed minimal changes in work settings and routines, needed to avoid tasks involving a variety of instructions or tasks, could understand to carry out simple one- or two-step instructions and "detailed but uninvolved" instructions involving a few concrete variables in or from standardized situations, and was unable to work with the public, Finding 5, *id*. at 19; that he was unable to perform any past relevant work, Finding 6, *id*. at 27; that, considering his age (22 years old, defined as a younger individual, on his alleged disability onset date, January 15, 2011), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*.; and that he, therefore, had not been disabled from January 15, 2011, his alleged onset date of disability, through the date of the decision, February 13, 2019, Finding 11, *id*. at 28. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of*

*Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

### I. Discussion

The plaintiff contends that the ALJ's mental RFC determination is unsupported by substantial evidence and inconsistent with the testimony of medical expert Neli Cohen, Psy.D., because the ALJ failed to include any limitation on work with co-workers and supervisors. *See* Statement of Errors at 4-6. He adds that the decision is incoherent and internally inconsistent because, at Step 4, the ALJ relied on the VE's response to a different hypothetical question (which

3

posited restrictions on working with co-workers and supervisors) than at Step 5 (which included no such restrictions). *See id.* at 2-4. I agree that, because the ALJ purported to give great weight to the Cohen testimony but neither adopted limitations on interactions with co-workers and supervisors nor explained their omission, and then relied on the VE's responses to conflicting hypothetical questions at Steps 4 and 5, one of which reflected additional social limitations and one of which did not, the decision cannot be deemed supported by substantial evidence, and remand is required.

Central to this appeal is the ALJ's handling of the testimony of Dr. Cohen. *See* Statement of Errors at 4-6; Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 4-7. At hearing, the ALJ inquired about the plaintiff's "relationship with people" and ability "to get along with supervisors[.]" Record at 65. Dr. Cohen testified that, based on the plaintiff's "history of being angry[,]" she "assume[d] that he may have moderate problems with this." *Id*. She added that she saw no evidence of "extreme presentation of having problems with working with the public or coworkers[,]" noting that the plaintiff had been participatory and cooperative during clinical assessments and group therapy. *Id*. However, she reiterated that she "anticipat[ed] moderate problems" given the plaintiff's "anger outbursts[.]" *Id*. at 66.

The following colloquy between the ALJ and Dr. Cohen then occurred:

Q    Now, would you say that's true of his relationship with the public as well as his relationships with coworkers and supervisors? Or, would you say one is going to be more problematic than the other?

A    I would say that supervisors is going to be more problematic. However, I do tend to believe that in general his social interactions are going to be fluctuating between mild to moderate, with the supervisors being mostly in the moderate limitation.

*Id.*

4

When the plaintiff's counsel later inquired about the plaintiff's ability to deal with supervisors and co-workers, Dr. Cohen reiterated that she "expect[ed] moderate limitations[,] with more pronounced being with supervisors[,]" and that "even with coworkers and the actual public," she expected "from mild to moderate" limitations. *Id.* at 72.

In weighing the opinion evidence of record, the ALJ noted that Dr. Cohen had assessed "mild to moderate limitations in the ability to respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting, and *moderate limitations* in the ability to understand, remember and carry out short simple instructions, make judgments on simple work-related decisions, *interact appropriately with the public, interact appropriately with supervisors, interact appropriately with coworkers*, and understand, remember, and carry out detailed verbal but not visual instructions." *Id.* at 24 (emphasis added).

The ALJ gave Dr. Cohen's hearing testimony "great weight[,]" explaining that Dr. Cohen "was able to review all of the medical records[,] . . . listened to the [plaintiff] testify[,]" "specializes in psychology, and is familiar with the Social Security Administration's rules and regulations[,]" and that her testimony was "supported by and consistent with the record as a whole[,] including the mental status examination findings, the treatment required and received, and the reported activities of daily living." *Id.* Yet, the only social limitation included in the ALJ's RFC finding was an inability to work with the public. *See* Finding 5, *id*. at 19. She assessed no limitations in the plaintiff's ability to work with supervisors or co-workers. *See id*. She gave the remaining expert psychological opinions of record – two opinions of agency examining consultant Roger S. Zimmerman, Ph.D., and the opinions of agency nonexamining consultants – "some weight." *Id*. at 26.

The ALJ ultimately found, based on the testimony of the VE, that the plaintiff could not perform past relevant work as a dishwasher or machine feeder but could perform other work existing in significant numbers in the national economy, namely, the jobs of garment folder, laundry laborer, and laundry folder. *See* Findings 6, 10, *id*. at 27-28. Yet, as the plaintiff points out, *see* Statement of Errors at 3-4, in reaching those conclusions, the ALJ appears to have relied on the VE's response to two different hypothetical questions, one of which adopted more stringent social limitations.

The ALJ posed three hypothetical questions to the VE during the hearing. In the first, the VE was asked to assume that the individual

> must avoid tasks avoiding a variety of instructions or tasks, but is able to understand to carry out simple one and two-step instructions, and is able to understand to carry out detailed but uninvolved instructions with a few concrete variables and/or from standardized situations[,] . . . must have minimal changes in work settings and routines[,] and cannot work in contact with the public.

*Id*. at 90-91. The VE testified that such an individual could perform the plaintiff's past work as a dishwasher and machine feeder as well as the positions of garment folder, laundry laborer, and laundry folder. *See id.* at 91.

In the third hypothetical, the VE was asked to assume that the individual needed "a well-spaced work environment, but could work in view of others, just not closely, and could not work . . . in collaboration with others." *Id.* at 93. The ALJ clarified that this meant that the individual could "work in the same room with other individuals . . . in view of them," but that the work "would need to be such that . . . the individual is not . . . working in close proximity to another individual[.]" *Id.* The VE testified that such an individual could not perform the plaintiff's past work as a dishwasher and machine feeder because the "proximity is going to be too close[,]" and that he could think of no other jobs fitting the hypothetical question, noting that the positions of

garment folder, laundry laborer, and laundry folder all involve people coming into contact with the employee. *Id.* at 94-95. After the ALJ clarified that this third hypothetical individual did not require "complete discontact[,]" the VE still could not think of a job that satisfied its requirements. *Id.* at 95-97.[2] The ALJ, thus, seemingly relied at Step 4 on the VE's answer to the third hypothetical question and at Step 5 on her answer to the first.

At bottom, therefore, the ALJ purported to give "great weight" to the Cohen testimony but assessed a more stringent limitation against contact with the public than found by Dr. Cohen and, more importantly, no restriction in the plaintiff's ability to work with supervisors and co-workers. She also purported to adopt a mental RFC mirroring the first hypothetical question to the VE but seemingly relied on the VE's answer to the third at Step 4.

The plaintiff contends that the ALJ's RFC determination is unsupported by substantial evidence because, despite giving great weight to the Cohen testimony, she inexplicably assessed no limitation on the plaintiff's ability to interact with co-workers and supervisors. *See* Statement of Errors at 5. He adds that the ALJ's reliance at Step 4 on a hypothetical RFC that assumed a well-spaced work environment, which accounted for limitations in interactions with co-workers and supervisors, "exacerbate[d]" that error. *See id.* at 4, 6. I agree.

While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) (citation and internal punctuation omitted), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the

---

[2] The third hypothetical question was the only one that the VE testified would result in no past work. In the second hypothetical question, the ALJ asked the VE to assume certain physical limitations in addition to the mental limitations posited in the first hypothetical question. *See* Record at 91-92. The VE testified that this would "still allow for both of the past work positions" as well as the garment folder, laundry laborer, and laundry folder positions cited in response to the first hypothetical question and a "Cleaner II" position. *Id*. at 92-93.

ALJ reached a supportable result *via* an acceptable analytical pathway, *see*, *e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).  That is the case here.

The commissioner argues that, for several reasons, any errors are harmless, rendering remand "an empty exercise."  Opposition at 3, 8 (quoting *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)).

First, he asserts that the ALJ plainly relied on the VE's responses to the hypothetical question mirroring her assessed RFC and merely misspoke (erring in the plaintiff's favor) in stating that the VE had testified that he could not perform past relevant work.  *See id*. at 2-4.

Second, he argues that the ALJ was not required to adopt further social limitations.  *See id*. at 4-7.  That is so, he contends, because (i) Dr. Cohen did not assess a specific workplace social functional limitation, (ii) the plaintiff has not shown that an at-most moderate limitation in interaction with co-workers and supervisors requires any specific degree of functional limitation, and (iii) the ALJ pointed to evidence of a lack of social functional limitation.  *See id*.

Finally, he argues that, in any event, the plaintiff's argument is vocationally irrelevant because the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) (DOT) indicates that all of the jobs the VE identified are rated as not significant with respect to people. *See id*. at 8 (citing *Shatema B. v. Saul*, 1:19-cv-00566-NT, 2020 WL 4383802, at *4 (D. Me. July 31, 2020) (rec. dec., *aff'd* Aug. 17, 2020) (quoting *Connor v. Colvin*, No. 1:13-cv-00219-JAW, 2014 WL 3533466, at *4 (D. Me. July 16, 2014)); *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 982225, at *3 (D. Me. Apr. 12, 2009), *supplemented on other grounds*, 2009 WL 1609033 (D. Me. June 8, 2009) (rec. dec., *aff'd* July 28, 2009)).

I am unpersuaded.

First, as discussed above, the ALJ (i) stated that she gave great weight to the Cohen testimony but inexplicably omitted any social limitation pertaining to co-workers or supervisors and (ii) reached a Step 4 determination consistent with the testimony of the VE in response to a hypothetical question containing such a social limitation, casting doubt on whether her Step 4 finding was merely the product of a scrivener's error.

Second, regardless of whether Dr. Cohen's testimony as to the nature of the plaintiff's limitations was vague and whether the ALJ identified evidence of record indicating, for example, that the plaintiff was able to socialize with treatment providers, a treatment group, family members, and others, the ALJ herself accorded the Cohen testimony great weight. There is a tension between her characterization of her handling of that evidence and her omission of any restriction on the plaintiff's ability to work with co-workers and supervisors, particularly given that she deemed the plaintiff "unable to work with the public" – a more stringent limitation than assessed by Dr. Cohen – yet Dr. Cohen testified that the plaintiff's interactions with supervisors would likely be *more* problematic than those with the public. *Compare* Finding 5, Record at 19 *with id*. at 66.

The ALJ erred in failing to recognize, let alone resolve, this tension. *See, e.g.*, *Ireland v. Berryhill*, No. 1:16-cv-00376-JDL, 2017 WL 2730023, at *9 (D. Me. June 25, 2017) (rec. dec., *aff'd* Sept. 29, 2017), *aff'd*, No. 17-2176, 2019 WL 4316793 (1st Cir. Sept. 9, 2019) ("[a]bsent any explanation for the discrepancy[,]" ALJ erred in finding "moderate limitations in social functioning, tracking the opinions" of two experts, yet omitting those experts' restriction against working with the public); *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6-7 (D. Me. Sept. 19, 2016) (ALJ erred in according significant weight to expert's opinion that

9

claimant would do better in employment with limited interactions but failing either to include or explain the omission of that limitation).

Third, and finally, the commissioner's contention that the plaintiff's argument is vocationally irrelevant is unavailing. The commissioner correctly observes that all of the jobs the VE identified – garment folder, laundry folder, and laundry laborer – are rated as "not significant" in the category of "People: 8 – Taking Instructions – Helping" ("People 8"). Opposition at 8; DOT §§ 789.687-066, 1991 WL 681266 (garment folder), 369.687-018, 1991 WL 673072 (laundry folder), 361.687-018, 1991 WL 672992 (laundry laborer). He asserts that, therefore, "even accepting Plaintiff's argument that he should work in an environment with limited interaction with coworkers and supervisors, Plaintiff could still work the jobs that the VE identified." Opposition at 8. However, the cases that the commissioner cites for that proposition – *Shatema B.*, *Connor*, and *Arsenault* – are distinguishable.

*Shatema B.*, *Connor*, and *Arsenault* did not involve an ALJ's fundamental failure either to assess, or explain the omission of, expert limitations purportedly given great weight. Rather, in those cases, ALJs purported to adopt experts' assessed social limitations but deviated from the experts' descriptions, which this court deemed not to be an error in *Shatema B.* and to be a harmless error in *Connor* and *Arsenault* when the experts' versions aligned with the DOT rating of "not significant" for People 8. *Shatema B.*, 2020 WL 4383802, at *4 (deeming ALJ's finding that claimant could only *occasionally* interact with supervisors consistent with expert's opinion that she could "tolerate only *brief* and episodic social contacts with supervisors" when jobs identified by VE, including that of laundry folder, all had People 8 ratings of "not significant," which this court has interpreted as "consistent with limitations to *occasional, brief*, and superficial contact with coworkers and supervisors") (emphasis added) (internal quotation marks omitted); *Connor*,

10

2014 WL 3533466, at *4 (deeming ALJ's error in assessing a limitation to "only *routine contact with* the public[,]" rather than against any *work with* the public per the expert opinion the ALJ purported to adopt, harmless when (i) the DOT rated all four of the jobs at issue as "not significant" with respect to the People 8 category, (ii) the DOT described three of the four jobs at issue as not entailing any work with the public, and (iii) it was "reasonably clear" that the ALJ had intended to adopt "in toto" the expert's opinion prohibiting work, but not incidental contact, with the public) (emphasis added) (internal quotation marks omitted); *Arsenault*, 2009 WL 982225, at *2-3 (deeming ALJ's error in relying on VE's response to hypothetical question positing a limitation to *frequent* interaction with the public and *no limitation* on interaction with co-workers and supervisors, rather than *occasional* interaction with all three groups per the expert opinion the ALJ adopted, harmless when two of the jobs identified by the VE were rated "not significant" with respect to the People 8 category, which "[o]ther courts have found . . . to indicate that interaction with the public and/or coworkers and supervisors is not significant or *no more than occasional*") (emphasis added).

By contrast, in this case, despite purporting to give the Cohen testimony great weight, the ALJ made no finding of limitations in the plaintiff's ability to interact with co-workers and supervisors, and the VE testified, in response to the only hypothetical question that the ALJ posed containing such restrictions, that no jobs were available. The ALJ, thus, seemingly adopted the Cohen testimony but neither rejected Dr. Cohen's assessment of moderate limitations in that ability nor assessed any corresponding limitations.

Although "a court reviewing an agency action will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[,]" *Farley v. Astrue*, Civil No. 06-221-P-H, 2007 WL 4608723, at *3 (D. Me. Dec. 28, 2007) (citation and internal quotation marks

11

omitted), the ALJ's path here in resolving any discrepancy between the plaintiff's ability to interact with the public versus co-workers and supervisors is not reasonably clear. Remand, accordingly, is warranted.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 21st day of March, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge